Ira MORRIS, Plaintiff,

v.

**BLUE STAR LINES, a corporation, Defendant.**

Civ. No. 60-221.

United States District Court
D. Oregon.

April 21, 1961.

Pozzi & Wilson, Frank Pozzi, Portland, Or., for plaintiff.

Wood, Wood, Tatum, Mosser & Brooke, John R. Brooke, John Holden, Portland, Or., for defendant.

KILKENNY, District Judge.

Plaintiff prosecutes this action against defendant for personal injuries received in an accident which occurred aboard defendant's vessel in Portland, Oregon, in navigable waters of the United States. Plaintiff is a longshoreman and was working in such capacity aboard the S. S. Canadian Star, a vessel owned and operated by defendant. At said time plaintiff was employed by a master stevedore, namely, American Mail Line, Inc. The stevedore, by independent contract, had undertaken to load cargo in the holds of the vessel. The evidence is undisputed that the plaintiff and his working partner were stowing cargo by use of certain "rollers" in the hold of the vessel. The cargo was lowered through the square of the hatch to the t'ween deck on which plaintiff was working. The cargo was placed on the rollers and then moved by plaintiff and his working partner to the stowage area. Located in the area was a stanchion which was covered by substantial cork insulation and this insulation was covered by sheet metal. On the occasion of plaintiff's injury the winch driver, an employee of the master stevedore, dropped the cargo in such a manner so that when it hit the rollers they started to move rapidly against plaintiff and pushed him toward and into the stanchion. Plaintiff and another testified that a corner of a square of such metal

764

protecting the cork on the stanchion was torn loose so that it protruded out from the stanchion some eight or ten inches. This metal projection was sharp and pointed. When plaintiff backed into the stanchion the projection caught him in the lumbar region of his back and held him in such a manner so that he was crushed between the cargo load on the rollers and the stanchion. Plaintiff charges that the sharp metal wrapping projecting from the stanchion made the vessel unseaworthy and that such unseaworthiness proximately caused the plaintiff's injuries. That plaintiff's injuries were substantial is evidenced by the agreed medical expense of $1,467.60 and that plaintiff was unable to follow his occupation for approximately one year.

■ Defendant's counsel agree there is substantial evidence that the metal corner was protruding from the stanchion. However, defendant argues that such a condition would not render the ship unseaworthy. Defendant argues that when a portion of a vessel is being used for a purpose for which it is not intended, unseaworthiness cannot result. Reynolds v. Royal Mail Lines, 9 Cir., 1958, 254 F.2d 55, certiorari denied 358 U.S. 818, 79 S.Ct. 28, 3 L.Ed.2d 59. Reynolds holds that it is not necessary that the ship, gear or equipment be absolutely seaworthy and safe in all events, but only reasonably so, and then only when employed or *used for some purpose for which it was intended.* The stanchion was located in an area which workmen constantly used and it must have been intended that workmen would from time to time be bumped into and against this stanchion. Defendant's argument that the metal cover bore no relationship to the longshoremen working in the hold is not convincing. Certainly, the plaintiff was making a proper use of the work area and I believe that a fixed condition which would make a work area dangerous to workmen would create an unseaworthy condition. The duty to provide a ship which is seaworthy includes the duty of the ship and the owner to furnish the servant a safe place to work. Globe S.

S. Co. v. Moss, 6 Cir., 1917, 245 F. 54, 55; The Waco, D.C.E.D.Pa.1925, 3 F.2d 476, 478; Rederii v. Jarka Corporation, D.C.S.D.Me.1949, 82 F.Supp. 285, 291. Such duty exists regardless of whether the unseaworthiness is temporary or otherwise. Mitchell v. Trawler Racer, Inc., 1960, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941. It is difficult to conceive of anything more dangerous in a work area than a sharp metal object projecting from a stanchion which is designed for a smooth cover.

■ Conceding that the action of the master stevedore in dropping the cargo on the rollers exposed the plaintiff to the unseaworthy condition, the vessel is still liable for damages proximately caused by such condition. Crumady v. The Joachim Hendrik Fisser, 1959, 358 U.S. 423, 427, 79 S.Ct. 445, 3 L.Ed.2d 413; Waterman Steamship Corp. v. Dugan & McNamara, Inc., 1960, 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169.

Defendant argues that the protruding metal cover could not have been a "substantial factor in producing the harm." The weight of the evidence is against this contention. While it is true that the action of the master stevedore in suddenly dropping the cargo on the rollers forced plaintiff to retreat backwards into the stanchion, the undisputed testimony is that he would have slipped away from the stanchion had it not been for the protruding metal. The record supports the conclusion that the ship was unseaworthy in this respect and that such unseaworthiness was a proximate cause of plaintiff's injuries. The plaintiff and his working partner are presumed to speak the truth. I closely observed both while on the witness stand and I find nothing in the record or in their testimony or demeanor which would overcome this presumption. The fact that the ship's records revealed nothing with reference to a repair of the stanchion is not important. No doubt, numerous repairs are made on a ship without entry in a formal record.

■ Plaintiff's injuries were substantial. However, his recovery has been

quite complete. His earning power is as great or greater than it was before the accident. I find that he was damaged in the sum of $1,467.60 for doctor, hospital and medical expense, and $7,000 for loss of wages. $17,500 is a proper sum to allow plaintiff as general damages.

Proctors for plaintiff shall prepare and serve appropriate findings and judgment.