**HUMBLE OIL & REFINING COMPANY**

v.

**PHILADELPHIA SHIP MAINTENANCE CO., Inc.**

No. 91 of 1966.

United States District Court,
E. D. Pennsylvania.

Feb. 26, 1970.

James F. Young, Krusen, Evans & Byrne, Philadelphia, Pa., for Humble Oil & Refining Co.

Francis E. Marshall, Philadelphia, Pa., for Philadelphia Maintenance Co.

OPINION

LUONGO, District Judge.

Marion Domeracki, a longshoreman, was injured on September 25, 1964, while loading stores aboard the SS ESSO LIMA, a vessel owned and operated by plaintiff herein, Humble Oil & Refining Company (Shipowner). Domeracki's employer, Philadelphia Ship Maintenance Co., Inc., a stevedoring contractor (Stevedore), had been engaged by Shipowner to perform the loading operation. On April 12, 1965, Domeracki instituted suit against Shipowner seeking damages for the injuries he sustained. On March 3, 1966, Shipowner instituted the instant suit in admiralty against Stevedore seeking indemnification for losses sustained by Shipowner in the suit instituted against it by Domeracki.[1]

---

1. The procedural problems arising out of this method of seeking indemnity in longshoremen cases will happily no longer confront this court. In those cases where the vessel owner elects to bypass the normal third-party proceedings against the stevedore and chooses, instead, to institute a separate suit in admiralty for indemnification, it is within the power of the stevedore, if it makes timely motion for jury

In Domeracki's suit against Shipowner, the jury returned a special verdict, answering interrogatories as follows:

"1. Did defendant shipowner breach the absolute duty to furnish a safe and seaworthy vessel
 (a) by furnishing defective equipment?
 Yes X No _____
 (b) by failing to furnish adequate equipment?
 Yes X No _____
 (c) by permitting an improper method of operation in the loading of stores?
 Yes X No _____

2. If you have answered "YES" to any of the parts of Interrogatory No. 1, was plaintiff's injury proximately caused by defendant's breach of duty set forth in
 1(a)? Yes X No _____
 1(b)? Yes X No _____
 1(c)? Yes X No _____

3. Was defendant shipowner negligent in failing to provide a reasonably safe place for plaintiff to work?
 Yes X No _____

4. If your answer to Interrogatory No. 3 is "YES", was plaintiff's injury proximately caused by that negligence?
 Yes X No _____

5. In what amount do you assess plaintiff's damages?
 $ 270,982.00 _____

6. Was plaintiff guilty of contributory negligence?
 Yes _____ No X

7. If your answer to Interrogatory No. 6 is "YES", to what extent (stated in percentage) did plaintiff's negligence contribute to his injury?
 _____ . . . . _____%"

---

Based upon the jury's answers, judgment was entered in Domeracki's favor against Shipowner in the amount of $270,982.[2]

Before the court is Shipowner's motion for summary judgment under Rule 56, F.R.Civ.P., in this suit for indemnification against Stevedore.

■■ A stevedoring contractor warrants to a vessel owner that it will perform the requested services in a workmanlike, competent, and safe manner. Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958). This warranty is of the essence of the stevedore's

trial, to have the cases consolidated and tried before the same jury. See Close v. Calmar Steamship Corp., 44 F.R.D. 398 (E.D.Pa.1968) ; Turner v. Transportacion Maritima Mexicana S.A., 44 F.R.D. 412 (E.D.Pa.1968). This procedure has been upheld by the Court of Appeals for the Third Circuit in Blake v. Farrell Lines, Inc., 417 F.2d 264 (3d Cir. 1969).

2. The facts of Domeracki's accident are more fully set forth at p. 385, infra. For a more complete discussion see the opinion filed this day denying Shipowner's motions for judgment notwithstanding the verdict and for new trial. Domeracki v. Humble Oil & Refining Co., 312 F.Supp. 374 (E.D.Pa.)

contract and is analogous to a manufacturer's warranty of the soundness of a manufactured product. Nordeutsher Lloyd, Brennan v. Brady-Hamilton Stevedore Co., 195 F.Supp. 680 (D.Or. 1961). If the vessel owner suffers any losses due to a breach of the warranty of workmanlike service, the vessel owner may recover from the stevedore. Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); Hirstius v. Hess Terminal Corp., 286 F.Supp. 566 (E.D.Pa.1966).

In support of its motion for summary judgment, Shipowner argues (1) that the jury's findings in Domeracki's suit against it are binding on it and Stevedore in the present action; (2) that Stevedore has alleged no new or additional facts raising any genuine issue of material fact for trial on the issue of indemnity; and (3) that the facts of record clearly establish Stevedore's breach of warranty and Shipowner's right to indemnity and it is therefore entitled to summary judgment in its favor.

Stevedore contends, on the other hand, that neither party to the present action is bound by the jury's findings in the longshoreman's suit because it, Stevedore, was not a party to that action. It is Stevedore's position that none of the factual circumstances surrounding Domeracki's injuries have been "fully and fairly" litigated in relation to its liability to Shipowner, and that, hence, the entry of summary judgment would deprive it of the right to litigate the factual issues against it.

1. *Is Stevedore Bound by the Findings in the Prior Action of Domeracki v. Shipowner?*

■■ The general rule is that a person not a party to an action is not bound by the findings in that action in subsequent litigation involving the same fact situation. An exception has been carved out of the general rule in the law of indemnity and was stated, albeit as dictum, in Crawford v. Pope & Talbot, Inc., 206 F.2d 784 (3d Cir. 1953), as follows:

"If the indemnitor was not a party to the original action against the indemnitee, and where he was under no duty to participate in the defense of the original action, or where, being under such duty, he was not given reasonable notice of the action and requested to defend, neither the indemnitor nor the indemnitee is bound in subsequent litigation between them by findings made in the action. *Where, on the other hand, * * * the indemnitor, with notice of the action and of the indemnitee's request that he defend it, does not participate in the defense but leaves it to the reasonable efforts of the indemnitee, then in subsequent litigation between them both indemnitor and indemnitee are bound by the findings necessary to the judgment in the action.*" 206 F.2d at 795 (Emphasis added.)

■ Stevedore admits that Shipowner formally called upon it to take over the defense of the Domeracki action in March, 1966, and several times thereafter.[3] The notice and demand requirements are, therefore, clearly satisfied and Stevedore will be bound by the findings in the Domeracki suit if it was under a duty to defend that action. If the facts, actually or constructively known to the indemnitor at the time defense of the action is preferred to it, demonstrate that liability will eventually fall on indemnitor, the indemnitor is under a duty to defend.[4] Siebrand v. Eyerly Aircraft Co., 196 F.Supp. 936 (D.Or.1961); Nordeutsher Lloyd, Brennan v. Brady-Hamilton Stevedore Co., *supra*.

---

3. Defendant's Answer to Plaintiff's Motion for Summary Judgment, p. 1.

4. It is not necessary in this case to determine whether it is sufficient if the indemnitee presents a colorable claim of indemnity or whether indemnitee must go further and show a strong likelihood that the indemnitor would eventually be liable to the indemnitee, for in my view, this case clearly falls in the latter category.

■ In this case, Domeracki, the longshoreman, was injured while performing a job for which his employer, the Stevedore, had been retained by Shipowner. Stevedore was familiar with the facts surrounding the occurrence in which Domeracki sustained his injury. It was aware that Domeracki's claim against the Shipowner [5] was based upon the improper methods used in the loading of the stores aboard the vessel, and upon the inadequacy of the equipment employed for that purpose. Stevedore was aware that under its agreement with Shipowner it was obligated to furnish the number of men and the type of equipment required to do the job, and that it was its ultimate responsibility, as between Shipowner and Stevedore, to see to it that the job was done in a proper manner. Although claim was made in Domeracki's suit that the vessel was unseaworthy and that the Shipowner was negligent in failing to provide a safe place to work, it was, or should have been, readily apparent to Stevedore that the claims of unseaworthiness and negligence against Shipowner were actually founded upon the manner in which the loading operation was conducted and the equipment used to perform it, matters which were Stevedore's responsibility. The claims of unseaworthiness, in so far as the vessel was concerned, related to failure to make the cargo boom available for the loading of the stores, and the presence of a "frozen", or rusted, catch connecting a chain to the deck rail. The claim of negligence against Shipowner was based upon failure to furnish a safe place to work and the failure of the mate to require the longshoremen to discontinue the improper method of operation.

■ A stevedoring contractor breaches its warranty of workmanlike service by permitting an improper method of loading. Morales v. City of Galveston, 370 U.S. 165, 82 S.Ct. 1226, 8 L.Ed.2d 412 (1962). It has a duty to the vessel owner to suspend loading operations whenever it realizes that it is unsafe to proceed. Nordeutsher Lloyd, Brennan v. Brady-Hamilton Stevedore Co., supra. The vessel owner's failure to discover and correct the stevedore's breach of warranty is not a defense to its claim for indemnity. Ryan Stevedoring Co. Inc. v. Pan-Atlantic Steamship Corp., supra. The stevedore is liable if its breach of warranty creates or brings into play unseaworthy conditions or the negligence of the vessel owner. See, e. g., Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964); Waterman Steamship Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960); Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed. 2d 413 (1953); Gilchrist v. Mitsui Sempaku K.K., 405 F.2d 763 (3d Cir. 1968), cert. denied, Jarka Corp. v. Mitsui Sempaku K.K. 394 U.S. 920, 89 S.Ct. 1195, 22 L.Ed.2d 453 (1969); Dunn v. Ove Skou Rederi A/S, 45 F.R.D. 18 (E.D. Pa.1968); Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc., 224 F. Supp. 336 (E.D.Pa.1963), rev'd on other grounds, 339 F.2d 673 (3d Cir. 1964), cert. denied, 382 U.S. 812, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965). Cf. American Export Lines, Inc. v. Atlantic & Gulf Stevedores, Inc., 313 F.2d 414 (4th Cir.), cert. denied, 373 U.S. 924, 83 S.Ct. 1525, 10 L.Ed.2d 422 (1963).

Based upon what it knew or should have known at the time defense of the Domeracki action was tendered to it, then, Stevedore was aware that there was a strong likelihood that liability would ultimately rest upon it and it was under a duty, therefore, to take over the defense. Having failed to do so, Stevedore is bound by all those facts necessary for judgment in that action. Washington Gas Light Co. v. Dist. of Columbia, 161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712 (1896); Crawford v. Pope & Talbot, Inc., supra; Siebrand v. Eyerly Air-

---

5. In its Answer to Shipowner's Motion for Summary Judgment, Stevedore admitted that it was familiar with the contents of the Complaint and the pretrial memoranda in the Domeracki suit.

craft Co., *supra*. This includes not only the facts specifically found by the jury in its answers to interrogatories, but also such other facts as were necessary to support the jury's findings. From a review of the entire Domeracki record these facts emerge:

 Domeracki was assigned by Stevedore to a work crew of four men, including a foreman. The contract with Shipowner obligated Stevedore to furnish an adequate work force and all necessary equipment to load stores, including three or four crates of machinery weighing up to 350 pounds each. Under the agreement Stevedore was entitled to be paid for a minimum of four hours' work. The loading of the stores was completed within an hour. During the course of the work, Domeracki's foreman requested the use of the ship's boom to load the heavy crates, but the request was denied by the ship's mate because the boom was being used in the loading of cargo. The foreman then ordered the longshoremen to load the stores through the pipe rail, an opening in the permanently affixed deck railing protected by two removeable chains. The longshoremen disconnected and dropped the lower chain but were unable to release the upper one because the catch was rusted and "frozen" to the railing. The foreman brought this fact to the mate's attention. The mate did nothing to correct the condition and told the foreman to do the best he could. Three of the longshoremen began to pass the stores through the opening between the lip of the deck and the still connected chain. The foreman, who was engaged in conversation with the mate on deck, did not assist. One of the heavy crates became stuck under the chain. It was while attempting to free the crate that Domeracki sustained the injury to his back.

**2. *Have Any Genuine Issues of Material Fact Been Raised in This Indemnity Action?***

I have carefully examined the entire record in this indemnity action and I fail to find any allegation of disputed facts not litigated in the Domeracki action. All Stevedore seeks to do here is to re-litigate some of the factual issues already resolved in the prior action. Stevedore intimates (perhaps that's too mild a term) that Shipowner's defense of Domeracki's suit was designed to put Stevedore in the worst possible light, but it has failed to allege any facts which would form a basis for a claim of unreasonable defense. (There is no hint or suggestion of fraud or collusion between Shipowner and Domeracki.) What Stevedore's position boils down to is that a better job could have been done in defending against Domeracki's claim. Of course, that's the very risk it took when it declined to take over the defense of that action. In my view no genuine issue of material fact has been raised in this indemnity action. Whether Shipowner is entitled to entry of summary judgment in its favor, therefore, must be decided on the basis of the facts established in the Domeracki action and facts which are undisputed in this indemnity action.

**3. *Is Shipowner Entitled to Summary Judgment?***

The facts lead to the inescapable conclusion that Domeracki's injury was caused solely by Stevedore's breach of warranty and Shipowner is therefore entitled to a judgment of indemnity against Stevedore. See Hirstius v. Hess Terminal Corp., *supra;* Nordeutsher Lloyd, Brennan v. Brady-Hamilton Stevedore Co., *supra.* The injury was caused by the improper loading operation. The Stevedore was responsible for performing the loading operation properly. Its foreman was in charge. He could have (1) suspended the operation until the ship's boom was available; (2) sent for shore based lifting equipment; (3) sent for more men; (4) waited until the "frozen" catch was freed. The inadequacy (unavailability of the boom), and the defectiveness (the "frozen" chain catch) of the ship's equipment were clearly brought into play by Stevedore's breach of warranty to perform

**386**

its job in a good and workmanlike manner. As for Shipowner's negligence, as before noted, that could only have consisted of the failure to provide a safe place to work by reason of the aforementioned conditions and the mate's failure to suspend the improper loading operation of which he had knowledge. These likewise were conditions created or brought into play by Stevedore's breach of warranty. On these facts Stevedore must indemnify Shipowner. Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., *supra;* Crumady v. The Joachim Hendrik Fisser, *supra;* Gilchrist v. Mitsui Sempaku K.K., *supra;* Dunn v. Ove Skou Rederi A/S, *supra.*

Judgment will be entered in Shipowner's favor. Since Stevedore must indemnify Shipowner for all losses sustained in the suit instituted by Domeracki, Shipowner is entitled to recover the full amount awarded to Domeracki, $270,982, with interest from the date of Judgment, May 22, 1969, plus costs and reasonable attorney's fees. Gilchrist v. Mitsui Sempaku K.K., *supra.* If the parties are unable to agree, within thirty days, on the amount of costs and attorney's fees to be awarded, a hearing will be scheduled to determine the amount. If the parties do come to agreement, judgment will be entered accordingly.