Joseph RODRIGUEZ, Plaintiff,

v.

OLAF PEDERSEN'S REDERI A/S,
Defendant and Third-Party
Plaintiff-Appellee,

v.

AMERICAN STEVEDORES, INC.,
Third-Party Defendant-Appellant,

and

A. M. Kristopher Co., Inc.,
Third-Party Defendant.

No. 78, Docket 75–7170.

United States Court of Appeals,
Second Circuit.

Argued Oct. 23, 1975.

Decided Dec. 9, 1975.
Certiorari Denied April 26, 1976.
See 96 S.Ct. 1726.

Joseph Arthur Cohen, New York City (Alexander, Ash, Schwartz & Cohen, Sidney A. Schwartz, New York City, on the brief), for third-party defendant-appellant.

Thomas F. Molanphy, New York City (Haight, Gardner, Poor & Havens, William P. Kain, Jr., New York City, on the brief), for defendant and third-party plaintiff-appellee.

Before MOORE, FEINBERG and VAN GRAAFEILAND, Circuit Judges.

FEINBERG, Circuit Judge:

In this case we again have the three-cornered lawsuit involving an injured longshoreman, the shipowner and the stevedore. The complexity of the issues before us is lessened somewhat because on appeal only the stevedore and the shipowner remain in the litigation, the stevedore appealing from the grant of summary judgment for the shipowner on the latter's third-party complaint, by the United States District Court for the Eastern District of New York, Edward R. Neaher, J. We affirm.

I

Since the facts of the case are set out in detail in Judge Neaher's thorough opinion, D.C., 387 F.Supp. 754, we will discuss them only briefly. Joseph Rodriguez, a longshoreman employed by appellant American Stevedores, Inc. (Stevedore) was injured in July 1967 when he fell through an open hatch square in the upper tween deck of hatch # 2 of a vessel owned by appellee Olaf Pedersen's Rederi A/S (Shipowner). Earlier in the day, Rodriguez had worked in that hatch, but the longshoremen had completed their work there and moved on to other tasks in another hatch. Telling his supervisor that he had left his hook and gloves in the # 2 hatch, Rodriguez made his way back along a darkened corridor, with only a small penlight for illumination, ignoring a less direct but safer route. In the meantime, at the order of the vessel's chief officer, ship cleaners had removed the covers from the # 2 hatch tween deck, which had been covered when the longshoremen were working; the cleaners had also covered the corresponding opening in the weather deck, so that the # 2 hatch was now dark. When Rodriguez arrived on the tween deck of the darkened # 2 hatch, he tripped and fell through the uncovered opening into the lower hold.

At the resulting trial in 1971, a jury found the Shipowner negligent, but reduced Rodriguez's damages from $80,000 to $35,000 because of his contributory negligence. The same jury denied the Shipowner's claim that it was entitled to indemnity from the Stevedore because the latter had breached its warranty of workmanlike performance, but the judge, the late George Rosling, set aside the verdict and ordered a new trial.[1] Before the new trial could begin, however, Judge Rosling died, and the case was assigned to Judge Neaher. Neither party had additional evidence to submit, and the Shipowner, contending that on the record of the prior trial it was entitled to indemnity as a matter of law, moved for summary judgment, which was granted. This appeal by the Stevedore followed.

---

1. The Stevedore argues that this was error. We need not discuss the propriety of this ruling, however; since we conclude that the Shipowner at that time was entitled to the judgment it then sought as a matter of law, any error in granting a new trial was in the Stevedore's favor.

## II

■ The Stevedore raises two principal issues. First, it argues that the Shipowner is not entitled to indemnity because the Stevedore did not, as a matter of law, breach its warranty. As Judge Neaher correctly pointed out, a long line of cases in this circuit holds that as a matter of law, a stevedore's warranty is breached when it supplies a negligent employee, and that therefore a jury finding of contributory negligence on the part of a longshoreman-plaintiff requires that verdict be directed against his stevedore employer on this issue. *King v. Deutsche Dampfs-Ges,* 523 F.2d 1042, 1045 (2d Cir. 1975); *Hartnett v. Reiss S.S. Co.,* 421 F.2d 1011, 1017–18 (2d Cir.), cert. denied sub nom. *Grain Handling Co. v. Hartnett,* 400 U.S. 852, 91 S.Ct. 49, 27 L.Ed.2d 90 (1970); *McLaughlin v. Trelleborgs Angfartygs A/B,* 408 F.2d 1334 (2d Cir.), cert. denied sub nom. *Golten Marine Co. v. Trelleborgs Angfartygs A/B,* 395 U.S. 946, 89 S.Ct. 2020, 23 L.Ed.2d 464 (1969); *Mortensen v. A/S Glittre,* 348 F.2d 383 (2d Cir. 1965).[2] The Stevedore's reliance on *Nye v. A/S D/S Svendborg,* 501 F.2d 376 (2d Cir. 1974), cert. denied sub nom. *The Svendborg v. Marine Engine Specialties Corp.,* 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975), is misplaced, for that case explicitly distinguished cases involving the warranty. 501 F.2d at 380. Once the jury determined that Rodriguez, the Stevedore's employee, was contributorily negligent, no further issue of fact was presented; as a matter of law, the Stevedore breached its warranty.

## III

■ The Stevedore's second argument is that even if it did breach its warranty, there remains an issue of fact as to whether there was "conduct on [the Shipowner's] part sufficient to preclude recovery." *Weyerhaeuser S. S. Co. v. Nacirema Operating Co.,* 355 U.S. 563, 567, 78 S.Ct. 438, 441, 2 L.Ed.2d 491 (1958). Although the Supreme Court in *Weyerhaeuser* did not make clear what sort of conduct would be "sufficient to preclude recovery," we have held that in order to justify that result, the shipowner's fault

> must at the least prevent or seriously handicap the stevedore in his ability to do a workmanlike job. Merely concurrent fault is not enough.

*Albanese v. N. V. Nederl. Amerik Stoomv. Maats.,* 346 F.2d 481, 484 (2d Cir.), rev'd on other grounds, 382 U.S. 283, 86 S.Ct. 429, 15 L.Ed.2d 327 (1965). See also *Albanese v. N. V. Nederl. Amerik Stoomv. Maats.,* 392 F.2d 763, 765 (2d Cir.), rev'd on other grounds sub nom. *International Terminal Operating Co. v. N. V. Nederl. Amerik Stoomv. Maats.,* 393 U.S. 74, 89 S.Ct. 53, 21 L.Ed.2d 58 (1968); *Hartnett v. Reiss S. S. Co.,* supra, 421 F.2d at 1017; *Mortensen v. A/S Glittre, supra,* 348 F.2d at 385. If this is to be the standard, a directed verdict for the Shipowner was in order here despite the Stevedore's claim that a jury question was presented. The Shipowner's fault was the creation of a potentially hazardous condition by uncovering the hatch square on the tween deck in hatch # 2 and blocking off the light coming from above. Nothing about this negligence on the Shipowner's part prevented or hindered Rodriguez from rendering a workmanlike performance, that is, from using the safe route between hatches that was available, or at least securing adequate illumination before venturing down a dark corridor into a dark hatch.

---

**2.** Accord, *Santiago Martinez v. Compagnie Generale Transatlantique,* 517 F.2d 371 (1st Cir. 1975), petition for cert. filed sub nom. Fred Imbert, Inc. v. Compagnie Generale Transatlantique, —— U.S. ——, 96 S.Ct. 773, 46 L.Ed.2d 636, 44 U.S.L.W. 3162 (1975), 44 U.S. L.W. 3243 (Oct. 21, 1975); *United States Lines, Inc. v. Jarka Corp. of Baltimore,* 444 F.2d 26 (4th Cir. 1971); *Arista Cia. DeVapores, S. A. v. Howard Terminal,* 372 F.2d 152 (9th Cir. 1967). Contra, *Julian v. Mitsui O.S.K. Lines, Ltd.,* 479 F.2d 432 (5th Cir.), cert. denied sub nom. *Mitsui O.S.K. Lines, Ltd. v. Strachan Shipping Co.,* 414 U.S. 1093, 94 S.Ct. 725, 38 L.Ed.2d 551 (1973); *Shaw v. Lauritzen,* 428 F.2d 247 (3d Cir. 1970).

The Stevedore argues, however, that a jury question was presented under our recent decisions in *Conceicao v. New Jersey Export Marine Carpenters, Inc.,* 508 F.2d 437 (2d Cir. 1974), cert. denied sub nom. *Cia de Nav. Mar. Netumar v. Conceicao,* 421 U.S. 949, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975), and *Hurdich v. Eastmount Shipping Corp.,* 503 F.2d 397 (2d Cir. 1974). In *Conceicao,* plaintiff longshoreman was injured by a rolling steel pipe when wooden pipe cribs broke because they were stowed with too many pipes by the stevedore employer. The plaintiff was not contributorily negligent. Although the jury found that the stevedore had breached its warranty, the jury also found that the shipowner's conduct precluded recovery, and we affirmed. The conduct held sufficient to preclude the shipowner's indemnity consisted essentially of its failure to give the stevedore proper information regarding the overall amount of pipes to be stowed and the location of available pipe beds and the shipowner's lack of supervision of the loading. This was a direct hindrance of a stevedore attempting to do in a workmanlike manner the very job for which he was engaged. The conduct of the Shipowner's personnel here, while negligent, was far more remote from the Stevedore's actual work and did not hinder or prevent Rodriguez from performing his job satisfactorily.

Similarly, our recent decision in *Hurdich* does not compel the conclusion that Judge Neaher improperly applied the "prevent or hinder" test. In that case, as will be seen below, the court did not purport to apply the "prevent or hinder" standard at all and did not refer to our decisions in *Albanese, Mortensen* or *Hartnett.* In addition, as we also explain below, *Hurdich* on its facts is distinguishable from the present case.

The Stevedore also argues, however, that "prevent or hinder" should not be the standard, relying on *Conceicao* and *Hurdich.* According to the Stevedore, these decisions indicate that we have abandoned the "prevent or hinder" rule in favor of a different test for indemnity-precluding conduct, and under the new test the judgment against it was improper.

While both *Hurdich* and *Conceicao* evidence this court's concern about the apparently harsh impact on stevedores of the rules in this area, neither case compels the conclusion that we have adopted a new definition of conduct sufficient to preclude indemnity, at least in cases like the one at bar. The jury verdict for the stevedore that we affirmed in *Conceicao* was rendered after instructions that indemnity for the shipowner was precluded if it "by some action or inaction . . . prevented, hindered or seriously handicapped [the stevedore] in performing its workmanlike job." 508 F.2d at 443. Although the court felt, in words borrowed from the Supreme Court's decision in *Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co.,* 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964), that the shipowner was "the party . . . most able to minimize the particular risk involved," id., this language does not appear to have been intended as the adoption of a new rule.

In *Hurdich,* there is some indication of an intention to break new ground, since the opinion, quoting from *Italia Societa,* supra, says that the test that "should have been applied by the district court below but was not . . . [is] that 'liability should fall upon the party best situated to adopt preventive measures and thereby to reduce the likelihood of injury.'" 503 F.2d at 401. As already indicated, however, we do not believe that *Hurdich* is inconsistent with the result we reach here. In that case, the shipowner had engaged a contractor (stevedore) to replace an antenna insulator. The work was done on two separate days. On the first day, the old insulator was removed by an employee of the stevedore and two of the ship's crew. This process created debris, which the three workers cleaned up. The stevedore's employee returned alone three days later to complete the work, creating no additional debris and performing no

further clean-up. Two weeks later, the plaintiff, an employee of the shipowner, fell on some of the insulation debris that was supposed to have been cleaned up. The plaintiff was not contributorily negligent. This court ruled that the shipowner's conduct precluded indemnity from the stevedore.

The case is fairly distinguishable. The plaintiff in *Hurdich* was a member of the ship's crew, rather than, as in this case, a contributorily negligent employee of the stevedore, and the stevedore's breach of warranty was remote from the accident to which it contributed. In fact, the accident occurred two weeks after the stevedore's unworkmanlike performance. During all of this period, the shipowner's employees had exclusive control over the area and the ship "alone was capable" of correcting the dangerous condition, which it negligently failed to do. 503 F.2d at 402. In such a case, the shipowner did not "prevent or hinder" workmanlike performance by the contractor, but neither was its fault "merely concurrent." Rather, it was an intervening cause. See *La Capria v. Compagnie Maritime Belge,* 427 F.2d 244, 247 (2d Cir. 1970). When the stevedore's breach of warranty consists of the contributory negligence of its own employee, the plaintiff, such an analysis is usually not fruitful. Here, for example, Rodriguez's unworkmanlike performance was the immediate, and, by the jury's estimate holding him over 50 per cent contributorily negligent, the more important cause of the accident.

While the panel in *Hurdich* did disapprove of the test used by the district judge there, which was the "prevent or hinder" test,[3] the opinion does not explicitly disavow the earlier line of cases already discussed. Nor was there occasion

to. In *Hurdich,* where the shipowner's negligent conduct occurred well *subsequent* to the stevedore's breach of warranty, the "prevent or hinder" test, which was formulated in cases where the shipowner's conduct occurred *prior to* or *contemporaneous with* the breach, was ill-adapted for reaching an equitable result. Judge Neaher correctly assumed that the "prevent or hinder" standard was consistent with our decision in *Hurdich,* and that both are consistent with the policy announced by the Supreme Court in *Italia Societa* of placing responsibility on the party best able to minimize the risk involved. Under the circumstances of this case, we believe that we must still apply the "prevent or hinder" standard, as Judge Neaher did.[4]

## IV

■ The Stevedore argues that the interplay of the rules discussed above leads to a result which is anomalous and unfair, in that the Shipowner, which negligently created a dangerous condition and failed to warn business invitees, is indemnified from the consequences of its negligence by the Stevedore, which was not otherwise at fault, only because the Stevedore's employee was contributorily negligent in falling into the trap the Shipowner had created. Thus, the plaintiff's contributory negligence not only reduces the amount of the judgment against the Shipowner but also entitles it to shift the remainder of the damages, as well as the legal expenses it incurred in defending the action, to the otherwise innocent Stevedore. The Shipowner responds that the equities do not support the Stevedore at all. Thus, the Shipowner stresses that whatever it "should or should not have done, a workmanlike performance [by Rodriguez] would have

---

3. See *Hurdich v. R. C. A. Corp.,* 359 F.Supp. 1222, 1224 (S.D.N.Y.1973).

4. Our conclusion that the Shipowner's conduct did not preclude indemnity as a matter of law disposes of the Stevedore's contention that it was deprived of its right to have a jury determination of the issue. Although the Stevedore is correct that this is ordinarily an issue of fact, *Weyerhaeuser S.S. Co. v. Nacirema Oper-*

ating Co., 355 U.S. 563, 567, 78 S.Ct. 438, 2 L.Ed.2d 491, (1958); *Hurdich v. Eastmount Shipping Corp.,* 503 F.2d 397, 401 n.3 (2d Cir. 1974), the court of course remains free to direct a verdict where the evidence is insufficient to raise a jury question, and we have approved the trial judge's decision to do so in appropriate cases. See, e. g., *Mortensen v. A/S Glittre,* 348 F.2d 383 (2d Cir. 1965).

eliminated the risk of injury."[5] Moreover, as Judge Neaher noted:

> Rodriguez did not enter hatch # 2 in order to perform any assigned task. [The Shipowner] had no reason to expect longshoremen to be in that hold, since the stevedores' work there had been completed. And if the *Italia* test is to be applied, Rodriguez and his gang boss were best situated to avoid the danger by inspection of the area with an adequate light.

387 F.Supp. at 760.

We have long been troubled by this problem, which is aggravated by the all-or-nothing character of the indemnity doctrine. Cf. *Hurdich*, supra, where there was occasion to use the tort concept of contribution rather than the contract notion of indemnity. 503 F.2d at 403. As early as *McLaughlin*, supra, we expressed our misgivings about the "apparently irrational result" in these cases, but concluded that the roots of the difficulty lay in decisions of the Supreme Court,[6] and that for this reason "inferior federal courts will do better to abstain from further adventures in this wonderland and leave doctrinal development to the Supreme Court" and to Congress. 408 F.2d at 1338.

Congress has responded to the need. In 1972, it substantially revised the allocation of liability for accidents of this sort. 33 U.S.C. § 905(b).[7] The new statutory scheme deals with these problems in a comprehensive way that would be impossible for a court. Since future cases will be governed by the statute, the reexamination of the settled law of this circuit which the Stevedore invites us to make would have only the most limited practical effect. Under these circumstances, we decline to depart from the precedents which Judge Neaher correctly found controlling.

The judgment of the district court is affirmed.

---

**5.** Brief of Defendant and Third-Party Plaintiff-Appellee, at 13.

**6.** Responsibility for longshoremen's injuries has been differently allocated at different times, with each successive solution causing new problems. For the history of the judicial and legislative attempts to deal with the problem, see Stover, Longshoreman-Shipowner-Stevedore: The Circle of Liability, 61 Mich.L. Rev. 539 (1963). See also *Fairmont Shipping Corp. v. Chevron International Oil Co.*, 511 F.2d 1252 (2d Cir.), cert. denied, 423 U.S. 838, 96 S.Ct. 66, 46 L.Ed.2d 57 (1975).

**7.** 33 U.S.C. § 905(b) provides:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.